**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JUDYTH F. WATTS,                                    Case No. 1:16-cv-319
    Plaintiff,                                  Barrett, J.
                                                    Litkovitz, M.J.
    vs.


COMMISSIONER OF                                     **REPORT AND**
SOCIAL SECURITY,                                    **RECOMMENDATION**
    Defendant.


       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 16), the Commissioner's Response in Opposition (Doc. 19), and plaintiff's reply

(Doc. 22).

**I. Procedural Background**

       Plaintiff protectively filed her application for SSI in December 2011, alleging disability

since June 1, 2002, due to fibromyalgia, a back problem, carpal tunnel syndrome, a rod in her

leg, and a learning disability. (Tr. 302). Plaintiff's application was denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Kevin J. Detherage. Plaintiff and a vocational expert (VE)

appeared and testified at the ALJ hearing. On September 12, 2014, the ALJ issued a decision

denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was

denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

2

the relevant previous employment, the burden shifts to the Commissioner to show that the

claimant can perform other substantial gainful employment and that such employment exists in

the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since December 8, 2011, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: Lumbar degenerative disc disease; lumbar herniated disc; carpal tunnel syndrome; depression; substance use disorder; asthma; fibromyalgia; headaches; status-post right-leg surgery; and obesity (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following restrictions: She can perform unskilled work.  She can occasionally stoop, kneel, crouch or crawl.  She can never climb ladders, ropes or scaffolds.  She can occasionally climb ramps or stairs.  She should avoid concentrated exposure to dusts, fumes, gases, odors or poorly ventilated areas.  She should avoid exposure to hazards such as heights or machinery with moving parts.  She can frequently handle and finger with the upper extremities.  She cannot perform production-rate pace work.  She can tolerate occasional changes in routine work-place setting.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).
>
> 6. The [plaintiff] was born [in] . . . 1977 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[1]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since December 8, 2011, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14-29).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cleaner/janitor (227,470 jobs nationally), packer (324,100 jobs nationally), and inspector (130,725 jobs nationally). (Tr. 28).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff raises the following assignments of error: (1) the ALJ erred by failing to find that plaintiff's low IQ score, or borderline intellectual functioning, was a "severe" impairment; (2) the ALJ erred by finding plaintiff had the "severe" impairment of "substance use disorder"; (3) the ALJ improperly weighed the opinion evidence regarding plaintiff's mental limitations; (4) the ALJ failed to follow SSR 12-2p when evaluating plaintiff's fibromyalgia; (5) the ALJ erred by making an adverse credibility finding that is not supported by substantial evidence; and (6) the ALJ erred by relying on the VE's answer to a hypothetical question that was not supported by substantial evidence. (Doc. 16).

### 1. The ALJ's analysis of plaintiff's borderline intellectual functioning

Plaintiff alleges the ALJ erred by failing to find her borderline intellectual functioning is a "severe" impairment. (Doc. 16 at 3-6). Plaintiff contends that the Sixth Circuit has "noted that an I.Q. below 80 would constitute a severe impairment, *Salmi v. Sec'y of H.H.S.*, 774 F.2d 685, 691-693 (6th Cir. 1985)." (*Id*. at 4). Plaintiff cites evidence to show that her IQ has been tested at 76, which places her in the borderline intellectual functioning range. (*Id*.). First, plaintiff relies on school records documenting that at age 17 years, 9 months, she was administered a Stanford-Binet Intelligence test by a school psychologist and her IQ was assessed as 76, which was estimated to be in the borderline range of intellectual functioning. (Tr. 377-78). In addition, plaintiff relies on the report of consultative examining psychologist Dr. Albert E. Virgil, Ph.D., J.D., who diagnosed plaintiff with borderline intellectual functioning. (Tr. 481-86). Plaintiff contends that the ALJ ignored the evidence of her borderline intellectual functioning for invalid reasons. Plaintiff further alleges that the ALJ committed a factual error by purportedly indicating in his written decision that an IQ of 76 does not qualify as borderline intellectual functioning. (*Id*. at 5, citing Tr. 18).

Initially, the Court finds that the ALJ did not commit the factual error plaintiff alleges. When analyzing whether plaintiff met the Listing of Impairments for Intellectual Disability, the ALJ stated in his written decision as follows:

> Section 12.05 refers to intellectual disability, which is defined as significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before the age of 22. Subsection C refers to valid verbal, performance or full-scale IQ scores of 60-70 and physical or other mental impairment imposing an additional and significant

6

> work-related limitation of function.[2] Although the claimant carries a diagnosis of borderline intellectual functioning, the medical evidence does not document and [sic] IQ scores in this range [Tr. 485]. Specifically, the [plaintiff's] school records refer to a valid IQ score of 76 [Tr. 378]. However, the [plaintiff] did not face a significant work-related limitation at that time or afterwards judging by the fact that she completed high school and worked at several different jobs (Testimony).

(Tr. 18). Plaintiff construes the ALJ's reference to "IQ scores in this range" to mean scores in the borderline intellectual functioning range. However, when read in the context of the ALJ's entire analysis, it appears the "range" the ALJ was referencing was the "60-70" range for "significantly subaverage general intellectual functioning" within which a claimant had to fall to meet the Listing. (Id.). Moreover, the ALJ demonstrated a correct understanding of the correlation between plaintiff's IQ score and her level of intellectual functioning when he wrote later in his decision that testing had measured plaintiff's IQ to be 76, "which places her in the borderline range [Tr. 378, 485]." (Tr. 25). Thus, the ALJ did not ignore plaintiff's borderline intellectual functioning or erroneously find that her IQ score of 76 did not fall in the borderline range.

Although the ALJ found that plaintiff's IQ placed her in the borderline range of intellectual functioning, the ALJ did not find her level of functioning to be a "severe" impairment. The regulations define a severe impairment or combination of impairments as one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). In the mental context, this means a significant limitation on a plaintiff's

---

[2] Listing 12.05, 20 C.F.R. Pt. 404, Subpt. P, App. 1, was revised effective January 17, 2017, and paragraph C was eliminated. 81 Fed. Reg. 66138, 66167 (Sept. 26, 2016) (to be codified at 20 C.F.R. Pts. 404 and 416). The revised rule is not retroactive but applies only to "new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." Id. at 66138.

ability to understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 416.921(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243 n.2.

An ALJ's failure to find a severe impairment where one exists does not constitute reversible error where the ALJ determines that the plaintiff has at least one other severe impairment, continues with the sequential evaluation process, and considers the limitations from additional impairments in formulating a plaintiff's RFC. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In that situation, any error in classifying the additional impairments as "non-severe" is harmless. *Id.*

In this case, although the ALJ did not find borderline intellectual functioning to be a severe impairment at step-two of the ALJ's five-step sequential evaluation process, the ALJ determined that plaintiff suffered from numerous severe physical and mental impairments, including depression and substance abuse disorder. (Tr. 14). In completing the remaining steps

8

of the sequential evaluation process, the ALJ considered the impact of plaintiff's borderline intellectual functioning in conjunction with her remaining mental impairments. The ALJ considered plaintiff's testimony that she was in special education classes in school and the many ways her mental issues have limited her functional abilities. (Tr. 20). The ALJ noted that according to plaintiff's testimony, her mental issues impacted her memory; caused concentration problems such that she struggles to understand things and must often have instructions repeated to her; and caused difficulties with reading, writing and math, which made it problematic for her to work as a cashier and especially difficult to make change and balance her register. (*Id.*). The ALJ also considered the sparse medical and other evidence regarding plaintiff's cognitive abilities. (Tr. 22, 25). The ALJ concluded based on this evidence that plaintiff's "cognitive and memory impairments" would not prevent her from working. (Tr. 25). The ALJ acknowledged that school records from 1994 placed plaintiff's IQ at 76, which was in the borderline range. (Tr. 25, citing Tr. 378, 485). The ALJ found that plaintiff was nonetheless able to finish high school and to work after graduation despite her cognitive impairments. (*Id.*, citing testimony). The ALJ also found that while plaintiff exhibited some cognitive deficiencies during Dr. Virgil's consultative examination, she successfully recalled three digits forward and three digits backwards which suggested an ability to perform unskilled work with no production rate and only occasional workplace changes. (*Id.*, citing Tr. 484).

Thus, the ALJ adequately considered the limitations from plaintiff's cognitive impairments in formulating plaintiff's RFC. Although plaintiff challenges the ALJ's assessment of the evidence related to her cognitive and other mental impairments, plaintiff has not shown how inclusion of borderline intellectual functioning as a "severe" impairment would have

changed the ALJ's assessment of her functional limitations. Any error in failing to classify her borderline intellectual functioning as severe is therefore harmless. *Maziarz*, 837 F.2d at 244.

Plaintiff's first assignment of error should be overruled.

### 2. The ALJ's finding that substance abuse disorder is a "severe" impairment

Plaintiff alleges as her second assignment of error that the ALJ erred by finding substance abuse disorder to be a "severe" impairment. (Doc. 16 at 6-7). Plaintiff alleges that the ALJ's finding is not substantiated by the medical or other records and is not supported by her testimony. Plaintiff alleges that the ALJ's finding "implies" current drug use that is not supported by the record. Plaintiff also contends that the ALJ's finding is not consistent with other findings he made in his written decision.

Plaintiff has not shown that the ALJ erred by finding substance abuse disorder to be a severe impairment or, if the ALJ erred in this regard, that the error was harmful. Consultative examining psychologist Dr. Virgil's report and plaintiff's testimony provide substantial support the ALJ's finding. Dr. Virgil diagnosed plaintiff with "Polysubstance Dependence (Partial Remission) 304.80" and opined that she "is . . . opioid dependent." (Tr. 485). He recommended that plaintiff be supervised in the management of any benefits "[b]ecause of her opioid dependence. " (*Id.*). Plaintiff "endorsed a history of substance abuse that included nerve pills, marijuana, cocaine, opioids and illegally obtained Suboxone," and she "reported facing charges related to the manufacturing of drugs [Tr. 483]." (Tr. 15; *see* Tr. 61-62). Plaintiff testified that she served a jail sentence related to a methamphetamine charge two years prior to the hearing and was placed on parole for five years. (Tr. 61). Plaintiff testified that she remained on parole at the time of the ALJ hearing and was required to undergo drug testing as a condition of parole.

10

(*Id*.). Plaintiff testified that her tests had been negative except for one test right after her release from jail. (Tr. 61-62). The ALJ reasonably relied on this evidence to find plaintiff suffered from the severe impairment of substance abuse disorder during the period of alleged disability.

Even assuming the ALJ erred by finding substance abuse disorder to be a "severe" impairment, plaintiff has not shown how the ALJ's error was harmful. Plaintiff alleges that the ALJ ignored evidence that she had received a certificate for undergoing substance abuse education, and she contends the ALJ's finding is inconsistent with his finding that Listing 12.09 for substance abuse was not satisfied and that the adverse effects of substance abuse would never have prevented her from working. (Doc. 16 at 7). However, plaintiff has not explained why the ALJ's finding that substance abuse disorder is a severe impairment is inconsistent with these other findings and there is no apparent contradiction in the ALJ's findings. Plaintiff does not allege that the ALJ's purported error impacted the disability determination in any other way.

Plaintiff's second assignment of error should be overruled.

### 3. Weight given to the psychological opinion evidence

Plaintiff alleges that the ALJ improperly weighed the opinions of the mental health sources of record. (Doc. 16 at 7-9). Plaintiff contends the ALJ erred by discounting the opinion of one-time examining psychologist Dr. Virgil. Plaintiff notes that under the regulations, the opinion of an examining source is generally entitled to more weight than the opinion of a non-examining source. (*Id*. at 7; *see* 20 C.F.R. § 416.927(c)(1)). Plaintiff also alleges that the ALJ "cannot disregard opinions of a consulting physician which are favorable to a claimant, *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983)." (*Id*. at 7-8). Plaintiff asserts that the diagnoses of "Major Depression, recurrent" and borderline intellectual functioning can support

11

the limitations Dr. Virgil assessed, and she suggests the ALJ improperly assumed the role of a "medical expert" by declining to adopt those limitations. (*Id*. at 8, citing *Lenon v. Apfel*, 191 F. Supp.2d 968, 978 (W.D. Tenn. 2001)). Plaintiff further contends that the reasons the ALJ gave for discounting Dr. Virgil's opinions are not valid or supported by the record. Plaintiff challenges the ALJ's finding that she had a sparse history of mental health treatment. (*Id*. at 7). Plaintiff also disputes the ALJ's finding that Dr. Virgil's findings do not support his assessment and suggests that the ability to talk with a trained clinical psychologist in a controlled environment does not translate into a lack of "severe occupational limitations." (*Id*. at 7-8). Plaintiff contends that the ALJ did not mention evidence that was consistent with Dr. Virgil's opinion, consisting of a diagnosis of Mood Disorder NOS and plaintiff's subjective complaint that she felt like crying which were included in an initial assessment by Mahajan Therapeutics, LLC, performed in June 2014. (*Id*., citing Tr. 613). Finally, plaintiff alleges the ALJ improperly relied on selective portions of the testimony of lay witness Dolores Spradlin, the grandmother of plaintiff's child, and ignored those portions that were consistent with Dr. Virgil's testimony. (*Id*. at 8, citing Tr. 71-77).

Defendant alleges that the ALJ gave valid reasons for discounting Dr. Virgil's opinion and substantial evidence supports the ALJ's decision to give little weight to the one-time examining psychologist's assessment. (Doc. 19 at 7-10).

Under the Social Security regulations, "a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence . . . adverse to the claimant" in a disability proceeding. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting

12

*Richardson,* 402 U.S. at 402).  In addition, the opinions of state agency medical and

psychological consultants may be entitled to significant weight where they are supported by

record evidence.  *Id.*; *see* 20 C.F.R. § 416.927(e)(2)(i)).  The regulations provide that unless the

ALJ gives a treating source's opinion controlling weight, the ALJ considers all of the following

factors in deciding the weight to give to any medical opinion:

> (1) Examining relationship. Generally, we give more weight to the opinion of a
> source who has examined you than to the opinion of a source who has not. . . .
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your
> treating sources. . . .
> . . . .
> (3) Supportability.  The more a medical source presents relevant evidence to
> support an opinion, particularly medical signs and laboratory findings, the more
> weight we will give that opinion. The better an explanation a source provides for
> an opinion, the more weight we will give that opinion.  Furthermore, because
> nonexamining sources have no examining or treating relationship with you, the
> weight we will give their opinions will depend on the degree to which they
> provide supporting explanations for their opinions.  We will evaluate the degree
> to which these opinions consider all of the pertinent evidence in your claim,
> including opinions of treating and other examining sources.
>
> (4) Consistency.  Generally, the more consistent an opinion is with the record as a
> whole, the more weight we will give to that opinion.
>
> (5) Specialization.  We generally give more weight to the opinion of a specialist
> about medical issues related to his or her area of specialty than to the opinion of a
> source who is not a specialist.
>
> (6) Other factors.  When we consider how much weight to give to a medical
> opinion, we will also consider any factors you or others bring to our attention, or
> of which we are aware, which tend to support or contradict the opinion.

20 C.F.R. § 416.927(c)(1)-(6).

The ALJ applied these factors and reasonably gave Dr. Virgil's assessment "little

weight."  (Tr. 26).  First, the ALJ relied on plaintiff's "sparse" mental health treatment history to

find Dr. Virgil's opinion was not supported by the medical evidence.  (*Id.*).  Although Dr. Virgil

assessed plaintiff as having debilitating mental health symptoms, plaintiff had seen a psychiatrist only once prior to Dr. Virgil's examination and she did not obtain additional mental health treatment until three months prior to the hearing for an initial assessment. (*Id.*, citing Tr. 602-615, 553).[3] Thus, there was little to no other medical evidence of record to support Dr. Virgil's assessment. *See* 20 C.F.R. § 404.1527(c)(3)-(4).

Further, the ALJ explained in detail his reasons for finding that Dr. Virgil's opinion was not supported by his own findings. (Tr. 26-27; *see* 20 C.F.R. § 416.927(c)(3)). Dr. Virgil made minimal abnormal findings when describing plaintiff's clinical presentation. (Tr. 481-85). Dr. Virgil observed that plaintiff's mood was depressed, which he attributed to "her current medical conditions and apparent resulting pain." (Tr. 484, 485). Dr. Virgil further opined that plaintiff demonstrated no issues with flow of information and thought and that she comprehended and carried out instructions and tasks during the examination. She presented as alert, responded to questions without apparent difficulty, and was fully oriented. Her attention was sufficient for responding to questions and "she exhibited a freedom from distractibility." (Tr. 484). Remote and recent memory appeared to be intact, and she recalled three digits forward and three backwards. Based on her "clinical presentation and her responses to questions," Dr. Virgil opined that she "present[ed] with adequate ability to make sound, common sense judgment."

---

[3] Plaintiff was assessed by a professional counselor on July 29, 2014. Plaintiff was diagnosed with Mood Disorder NOS. (Tr. 613). On mental status examination, plaintiff was cooperative with a "depressed mood, sad, tearful." (Tr. 612). Plaintiff was oriented x4, with good appearance and eye contact. (*Id.*). She displayed no evidence of homicidal or suicidal ideation or psychosis. (*Id.*). While this evidence supports the ALJ's finding of severe depression, these objective findings do not support Dr. Virgil's assessment of debilitating mental health symptoms. The only other mental health information in the record is a two-page document showing plaintiff received a "Certificate of Achievement" in "Basic Education" from late 2013, which plaintiff apparently obtained after attending six group sessions. (Tr. 552-53). As the ALJ reasonably determined, "the nature of these records provides no insight into the claimant's psychological functioning at that time." (Tr. 25).

(Tr. 485). Yet, despite these largely normal findings, Dr. Virgil assessed debilitating functional limitations. He found that plaintiff "was able to understand and carry out instructions during the session. Not well, but she attempted to carry them out. Because of her overall current mental status, she would not do so in a work setting." (Tr. 485). Dr. Virgil provided no explanation and cited no findings to support this seemingly contradictory conclusion. Further, despite observing that plaintiff did not display concentration issues during the examination and that remote and recent memory appeared to be "intact," Dr. Virgil assessed plaintiff's "attention and concentration skills" as "impaired" without providing any basis for this seemingly inconsistent finding. (Tr. 484, 486). Dr. Virgil also made the apparently inconsistent conclusion that plaintiff "was cooperative, but given her overall clinical presentation, she probably is not amenable to supervision in a work setting or able to interact adaptively with co workers." (Tr. 486). Dr. Virgil did not cite any aspect of plaintiff's clinical presentation that led him to conclude she would have difficulty interacting with supervisors or co-workers in a work setting despite his findings that plaintiff was alert, oriented, cooperative, attentive, logical and coherent, she was able to make common sense judgments, and she comprehended and carried out interview instructions and tasks. Finally, Dr. Virgil concluded that plaintiff "does not appear to be mentally or emotionally capable of responding appropriately to work setting pressures" without citing any findings to support his generalized conclusion. (Tr. 486). Given the conclusory and unsupported nature of Dr. Virgil's findings, the ALJ was entitled to discount the examining psychologist's conclusions. *See Kornecky v. Comm'r*, 167 F. App'x 496, 508-09 (6th Cir. 2007) (ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation" and finding ALJ was not bound

15

by examining physician's opinions that (1) the claimant would have moderate difficulty carrying out even simple one- or two-step instructions, but doctor's only direct observation of claimant's cognitive abilities was she was "alert and oriented"; (2) the claimant's ability to concentrate for extended periods was "markedly limited," but doctor provided no supporting observation or discussion with claimant; and (3) the claimant's ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness was "markedly impaired," but doctor observed no inappropriate behavior and described claimant's appearance as appropriate).

In addition, although plaintiff alleges that Dr. Virgil's assessment is consistent with the testimony of lay witness Dolores Spradlin, the ALJ was not bound to accept Ms. Spradlin's testimony. The assessment of the credibility of lay witnesses, as well as the weight to attribute their testimony, is peculiarly within the judgment of the ALJ. *See Allison v. Comm'r of Social Sec.*, No. 96-3261, 1997 WL 103369, at *3 (6th Cir. March 6, 1997) (citing *Lashley*, 708 F.2d at 1054 ("Perceptible weight must be given to lay testimony where . . . it is fully supported by the reports of the treating physicians.")). The ALJ reasonably exercised his discretion here to give Ms. Spradlin's testimony "little weight." (Tr. 27). Ms. Spradlin's testimony was not supported by a a treating provider's report. Nor was her testimony consistent in material respects with Dr. Virgil's assessment of plaintiff's functional limitations as plaintiff suggests. Ms. Spradlin described difficulties plaintiff had "caring for her child, driving, concentrating, and [in] temperament"; however, she did not provide an "explicit explanation" for why plaintiff could not work and instead opined only that plaintiff had no ambition and was capable of performing a simple job. (*See* Tr. 22; Tr. 71-77)).

16

Instead of relying on Dr. Virgil's assessment, the ALJ reasonably relied on the mental

functional assessments completed by the non-examining state agency mental health sources. (Tr.

27). Dr. Melanie Bergsten, Ph.D., reviewed the record on January 27, 2012, and determined that

plaintiff had mild restrictions in her activities of daily living; mild difficulties in maintaining

social functioning; moderate difficulties in maintaining concentration, persistence or pace; and

no episodes of decompensation of extended duration. (Tr. 112). Dr. Bergsten concluded that

plaintiff is able to understand and remember simple tasks and able to sustain concentration and

persistence to perform simple tasks. (Tr. 114-15). On reconsideration of the record in

September 2012, state agency psychiatrist Dr. David Demuth, M.D., concluded that plaintiff had

moderate difficulties in maintaining social functioning as well. (Tr. 125). He assessed plaintiff

as able to understand and remember simple 2-3 step task instructions, sustain concentration and

persistence to perform simple 2-3 step tasks, interact with others on a superficial basis, and carry

out tasks in settings where duties are relatively static. (Tr. 129-30). The ALJ found the

limitations these reviewing providers assessed were largely consistent with plaintiff's

performance during Dr. Virgil's examination, with the exception of the limitations on plaintiff's

social contact. (Tr. 27). The ALJ gave valid reasons for crediting the opinions of the state

agency mental health providers over the opinion of Dr. Virgil, and his reasons find substantial

support in the record. The ALJ was not bound to credit Dr. Virgil's opinion over the opinions of

the non-examining mental health providers simply because Dr. Virgil examined plaintiff on one

occasion. While an ALJ "must not substitute his own judgment for a doctor's conclusion

without relying on other medical evidence or authority in the record" or "reject evidence for no

17

reason or the wrong reason," *Lenon*, 191 F. Supp.2d at 977, that did not occur here.  The ALJ did

not err by discounting Dr. Virgil's opinion.

Plaintiff's third assignment of error should be overruled.

### 4.  Evaluation of plaintiff's fibromyalgia under SSR 12-2p

Plaintiff alleges as her fifth assignment of error that the ALJ did not follow Social

Security Ruling 12-2p when evaluating her fibromyalgia, which the ALJ found to be a "severe"

impairment.  (Tr. 14).  SSR 12-2p provides guidance on how the agency both develops evidence

to establish that a person has a medically determinable impairment of fibromyalgia and evaluates

fibromyalgia in disability claims.[4]  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).  SSR

12-2p describes fibromyalgia (FM) as "a complex medical condition characterized primarily by

widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at

least 3 months."  SSR 12-2p, 2012 WL 3104869, at *2.  SSR 12-2p explains that FM is a

"common syndrome" and that a person's symptoms must be considered when the agency decides

if the individual has a medically determinable impairment (MDI) of FM.  *Id*.  Pursuant to the

Ruling, "FM is an MDI when it is established by appropriate medical evidence," and the disease

"can be the basis for a finding of disability."  *Id*.  If a physician diagnoses FM, the agency will

"review the physician's treatment notes to see if they are consistent with the diagnosis of FM,

determine whether the person's symptoms have improved, worsened, or remained stable over

---

[4] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n. 1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).  The Sixth Circuit has refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations but has assumed that they are.  *Id*. (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004)).

time, and establish the physician's assessment over time of the person's physical strength and functional abilities." *Id.*

Plaintiff notes that the record includes a diagnosis of FM made in 2005. (Doc. 16 at 9-10, citing Tr. 389). Plaintiff alleges that the record documents ongoing symptoms of FM, including complaints of back pain, a sprain of the left knee, neck pain, and myositis (Tr. 437); anxiety/depression (Tr. 464); and degenerative disc disease (Tr. 479). Plaintiff alleges the ALJ erred by focusing on objective evidence when evaluating the credibility of her subjective complaints, which was improper because plaintiff had received a legitimate diagnosis of FM. (Doc. 16 at 10-11). Plaintiff asserts she has complained of numerous symptoms of FM, including headaches, fatigue, weakness, and somatic complaints and has been diagnosed with depression, mood disorder and anxiety. (*Id.*).

The ALJ did not err by improperly applying SSR 12-2p when evaluating plaintiff's disability claim. The ALJ accepted plaintiff's FM diagnosis made by a physician in 2005. (Tr. 14, 23). Contrary to plaintiff's argument, the FM diagnosis did not preclude the ALJ from considering the objective medical evidence when evaluating the credibility of plaintiff's subjective complaints of pain and other symptoms. (*See* Doc. 16 at 10-11, citing Tr. 21-23). FM was only one of numerous "severe" impairments the ALJ found. (Tr. 14). The ALJ found that plaintiff also suffered from lumbar degenerative disc disease, lumbar herniated disc, carpal tunnel syndrome, asthma, headaches, status-post right-leg surgery, obesity, depression, and substance use disorder. (*Id.*). Under the governing regulations, the ALJ was required to consider whether the objective medical evidence supported plaintiff's subjective complaints associated with these medical impairments when evaluating plaintiff's credibility. *See* 20 C.F.R. §

19

416.929(a) (in determining disability, the ALJ considers all symptoms, including pain, and the extent to which the claimant's symptoms "can reasonably be accepted as consistent with the objective medical evidence . . . [meaning] medical signs and laboratory findings. . . ."). The ALJ properly reviewed the medical evidence in accordance with § 416.929(a) and imposed functional restrictions to account for the limitations he found to be supported by the record.

Moreover, the ALJ did not discount plaintiff's more generalized subjective complaints associated with a diagnosis of FM due to a lack of objective findings as plaintiff alleges. (*See* Doc. 16 at 10-11). Instead, the ALJ rejected plaintiff's complaints of debilitating generalized pain and other symptoms she attributes to FM based on plaintiff's sparse treatment history and the apparent effectiveness of her medication. (Tr. 23-24). The ALJ found that plaintiff had pursued little treatment after initially being diagnosed with FM and that her subjective "complaints of widespread pain" had not persisted after she was prescribed medication for her back pain. (Tr. 23-24, citing Tr. 438, 439, 442, 444, 446, 448, 450, 452, 456, 458, 460, 462, 464, 466, 468, 470). The ALJ nonetheless found that the exertional, postural, environmental, and manipulative restrictions assessed in the RFC finding would account for any functional limitations imposed by her FM. (Tr. 24). The ALJ's findings are supported by the multiple treatment records the ALJ cited, which span February 2009 to May 2012. (Tr. 24). These records show that plaintiff consistently complained of back pain associated with degenerative disc disease and sporadically complained of left knee pain, but the records do not document complaints of widespread pain. Plaintiff alleges that she has complained of headaches, fatigue, weakness and "a number of somatic complaints and co-occurring conditions" that can be

20

symptoms of FM; however, she has not pointed to any portion of the record to document these complaints or functional limitations resulting from these symptoms. (Doc. 16 at 11).

Thus, plaintiff has not shown that the ALJ violated SSR 12-2p or otherwise erred in evaluating her FM. Plaintiff's fourth assignment of error should be overruled.

### 5. The ALJ's assessment of plaintiff's credibility

Plaintiff alleges the ALJ erred in assessing her credibility. (Doc. 16 at 11-12). Plaintiff contends the ALJ did not provide a sufficient explanation for his adverse credibility finding and committed a number of errors in weighing her credibility. (*Id*. at 11-12).

Title 20 C.F.R. § 416.929 and SSR 96-7p, 1996 WL 374186 (July 2, 1996)[5] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or

---

[5] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

other symptoms. 20 C.F.R. § 416.929(c), SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Upon review of the ALJ's complete credibility determination, the Court finds that the ALJ's credibility finding is substantially supported by the evidence. The ALJ cited six primary reasons for finding that plaintiff's subjective allegations and complaints were not fully credible to the extent they would preclude a restricted range of light work: (1) plaintiff's earnings record preceding the alleged onset date together with Ms. Spradlin's testimony regarding plaintiff's lack of motivation demonstrated plaintiff had a poor work history (Tr. 22-23, citing Tr. 296-297); (2) there were numerous discrepancies between plaintiff's testimony and the medical evidence; (3) the diagnostic test results were largely unremarkable and clinical signs were lacking; (4) plaintiff's FM treatment history was sparse; (5) medical evidence showed that plaintiff's pain symptoms improved with treatment; and (6) plaintiff had received extremely limited treatment for her mental health issues. (Tr. 18-27). The ALJ thoroughly reviewed the evidence of record and explained why he discounted plaintiff's credibility for these reasons.

Plaintiff suggests the ALJ was required to do more. (Doc. 16 at 12). She challenges the credibility finding because the ALJ did not discuss "aggravating or precipitating factors," steps she takes to relieve her symptoms, or what impact her low IQ has on her ability to "use and obtain medical services or to remember the effectiveness of her treatment." (*Id.*). She also suggests the ALJ should not have discounted her credibility in light of her daily activities, which

22

plaintiff generally alleges do not demonstrate she can work. (*Id*.). However, plaintiff does not point to any evidence of record that supports her arguments and shows that the ALJ erred by mischaracterizing or ignoring evidence he was bound to consider when weighing plaintiff's credibility.

In addition, plaintiff alleges that consultative examining psychologist Dr. Virgil opined she did not appear to exaggerate her symptoms, and both state agency reviewing physicians indicated that plaintiff's alleged impairments could reasonably be expected to produce her pain or other symptoms. (*Id*., citing Tr. 113, 126, 485). Plaintiff cites no authority to show the ALJ erred by failing to take any such findings into account. Nor has plaintiff explained why the reviewing sources' credibility findings are inconsistent with the ALJ's adverse credibility finding. Plaintiff asserts that no medical source, and specifically no "reviewing sources" of record "found that [plaintiff] was malingering or less than truthful. . . ." (Doc. 22 at 3). In fact, reviewing psychologist Melanie Bergsten, Ph.D., assessed plaintiff as only "Partially Credible" and opined that plaintiff's "conditions are limiting, not disabling as she alleged." (Tr. 113). On reconsideration, reviewing state agency physician William Bolz, M.D., deemed plaintiff's statements about her symptoms to be only "Partially Credible." (Tr. 126). Because these reviewing sources did not consider plaintiff to be fully credible, their opinions support rather than detract from the ALJ's credibility assessment.

Finally, plaintiff alleges that Ms. Spradlin's testimony was consistent with her own testimony and should have been considered by the ALJ. (Doc. 16 at 12). As noted above, the ALJ did consider Ms. Spradlin's testimony but accorded it "little weight." (Tr. 27). The ALJ committed no error in this regard. The ALJ was not bound to credit Ms. Spradlin's testimony.

*See Allison,* 1997 WL 103369, at *3; *Lashley*, 708 F.2d at 1054; *see also Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).  Further, the ALJ reasonably found Ms. Spradlin's testimony that plaintiff had no ambition and could perform a simple job to be inconsistent with plaintiff's allegations of debilitating functional limitations.

Thus, the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference.  Plaintiff's fifth assignment of error should be overruled.

### 6. The ALJ's hypothetical to the VE

Plaintiff alleges as her sixth assignment of error that the ALJ's hypothetical to the VE was not supported by substantial evidence, and the VE's answer to the hypothetical is an insufficient basis for denying plaintiff's SSI claim.  (Doc. 16 at 12-13).  Plaintiff has waived this argument by failing to develop it either legally or factually in the Statement of Errors.  The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived." *Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n. 13 (6th Cir. 2005) (citing recent decisions that stand for these two related propositions)). *See also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument challenging an ALJ's non-disability determination amounts to a waiver of that argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Plaintiff's sixth assignment of error should be overruled.

24

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED.**

Date: __1/31/2017__

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JUDYTH F. WATTS,                         Case No. 1:16-cv-319
    Plaintiff,                         Barrett, J.
                                         Litkovitz, M.J.
    vs.


COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).